UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PREETINDER K HUNDAL, et al.,

    Plaintiffs,

    v.

EAGLE VISTA EQUITIES LLC, et al.,

    Defendants.

Case No. 16-cv-01287-WHO

**ORDER ON MOTIONS TO DISMISS**

Re: Dkt. Nos. 6, 8

## INTRODUCTION

Plaintiffs Preetinder and Nishan Hundal ("the Hundals") bring this action against defendants PLM Loan Management Services, Inc. ("PLM"), Alice Glazer as Trustee of the Glazer Living Trust dated 12/30/87 ("Glazer"), and Eagle Vista Equities, LLC ("Eagle Vista"). In 2006, the Hundals obtained a mortgage loan secured by a deed of trust on their residence. After they defaulted, PLM conducted a trustee's sale at which Eagle Vista purchased the property. The Hundals now bring wrongful foreclosure claims against PLM, Glazer, and Eagle Vista, alleging that PLM was never appointed trustee under the deed of trust and thus lacked the authority to conduct the trustee's sale. They also accuse PLM and Glazer of various other misconduct in connection with the foreclosure process and trustee's sale. PLM and Eagle Vista move to dismiss. For the reasons discussed below, their motions are GRANTED.

## BACKGROUND

On October 20, 2003, the Hundals borrowed $450,000 from Argent Mortgage Company, LLC and secured the transaction with a deed of trust ("First DOT") against their residence (the "Property"). First Amended Complaint ("FAC") ¶ 2 (Dkt. No. 1); PLM RJN Ex. 1 (Dkt. No. 7-1).[1] On March 8, 2006, the Hundals borrowed an additional $165,000 and again secured the transaction with a deed of trust ("Second DOT") against the Property. FAC ¶ 3; PLM RJN Ex. 2

---

[1] The requests for judicial notice filed by PLM and Eagle Vista, Dkt. Nos. 7,8-2, 28, are GRANTED.

(Dkt. No. 7-1). The Second DOT was recorded on March 21, 2006. Second DOT at p.1. The Hundals allege that they borrowed the $165,000 from "Associated Real Estate Advisors, a Partnership" ("AREA"). FAC ¶ 3; *see also* Joint Case Management Statement at 3 (Dkt. No. 27). AREA is identified as the trustee in the Second DOT, but it is not identified as the beneficiary or lender. *See* Second DOT at p.1. According to the Second DOT, the beneficiary and lender was Bank of the West as Trustee for the Donald A. Glazer IRA ("Bank of the West"). *See id.* at p.1, Ex. A. Specifically, in the space for the identity of the beneficiary and lender, the Second DOT states, "SEE ATTACHED EXHIBIT A," and the attached "EXHIBIT A" states in whole:

> Bank of the West as Trustee for the Donald A. Glazer IRA
>
> C/O   Oak Financial Services
>       P.O. Box 3687
>       Saratoga, CA 95070

*Id.* at p.1, Ex. A.

On January 24, 2008, Bank of the West executed a Substitution of Trustee substituting PLM in place of AREA as the trustee under the Second DOT. PLM RJN Ex. 3 (Dkt. No. 7-1). The Substitution of Trustee was recorded on February 4, 2008.[2] *Id.*

On May 25, 2012, Bank of the West executed an Assignment of Deed of Trust transferring all beneficial interest in the Second DOT from Bank of the West to Glazer. PLM RJN Ex. 4 (Dkt. No. 7-1). The Assignment of Deed of Trust was recorded on June 4, 2012. *Id.*

The Hundals defaulted on their obligations under the Second DOT, *see* FAC ¶ 7, and on January 21, 2015, PLM caused to be recorded a Notice of Default and Election to Sell Under Deed of Trust, PLM RJN Ex. 5 (Dkt. No. 7-1) ("Notice of Default"). On April 24, 2015, PLM caused to be recorded a Notice of Trustee's Sale identifying the "[a]mount of unpaid balance and other charges" as $373,147.98 and setting the trustee's sale for May 20, 2015. PLM RJN Ex. 6 (Dkt. No. 7-1).

On May 15, 2015, the Hundals filed for bankruptcy under Chapter 13 of the United States

---

[2] On December 22, 2014, Glazer executed another Substitution of Trustee, again substituting PLM in place of AREA as the trustee under the Second Deed of Trust. FAC Ex. 1. This Substitution of Trustee was recorded on January 21, 2015. *Id.* The parties do not address the significance, if any, of this second substitution of PLM in place of AREA.

Bankruptcy Code in the United States Bankruptcy Court for the Northern District of California. *See* FAC ¶ 8. On July 31, 2015, the Bankruptcy Court granted Glazer's Motion for Relief From the Automatic Stay, finding that the Hundals' bankruptcy petition was part of a scheme to hinder, delay, or defraud creditors and permitting Glazer "to exercise her lawful remedies and lien rights under applicable non-bankruptcy law as to [the Property]." PLM RJN Ex. 7 (Dkt. No. 7-1).

Eagle Vista subsequently purchased the Property at the trustee's sale for $640,100. *See* PLM RJN Ex. 8 (Dkt. No. 7-1) (Trustee's Deed Upon Sale). PLM remitted $440,784.86 to the Glazer Living Trust and allotted $704.55 to the documentary transfer tax, leaving a surplus of $198,610.59. *See id.*; *see also* FAC ¶ 11. No surplus funds have been distributed to the Hundals, although PLM states that it has "repeatedly offered to [disburse] the surplus funds . . . to [the Hundals]," but that the Hundals "have thus far not returned the claim form PLM requested they execute to authorize release of those [funds]." Joint Case Management Statement at 6.

The Hundals filed this action on December 8, 2015 in the Superior Court of California for the County of Alameda. Dkt. No. 1. They filed their FAC on February 19, 2016. *Id.* The FAC names three defendants – PLM, Glazer, and Eagle Vista – and brings six causes of action: (1) wrongful foreclosure against all defendants, FAC ¶¶ 13-17; (2) breach of fiduciary duty against PLM and Glazer, *id.* ¶¶ 18-20; (3) violation of the federal Fair Debt Collection Practices Act ("FDCPA") against PLM and Glazer, *id.* ¶¶ 21-27; (4) breach of contract against PLM and Glazer; (5) dual tracking against PLM and Glazer, *id.* ¶¶ 32-35; and (6) violations of California's Rosenthal Act against PLM and Glazer, *id.* ¶¶ 36-37. It seeks, among other things, cancellation of the Trustee's Deed Upon Sale and reinstatement of the Hundals' title to the Property, an accounting of all funds received from the trustee's sale, and damages. *Id.* at p.14.

On March 16, 2016, PLM removed the case to federal court, asserting federal question jurisdiction on the basis of the FDCPA cause of action. Notice of Removal ¶ 2 (Dkt. No. 1). On March 23, 2016, PLM and Eagle Vista moved to dismiss. Dkt. Nos 6, 8. Glazer's response to the FAC is not yet due. *See* Dkt. Nos. 30, 32.

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain

1  statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in
2  order to "give the defendant fair notice of what the claim is and the grounds upon which it rests,"
3  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and alterations
4  omitted).

5   A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure
6  12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir.
7  2001). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable
8  legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela
9  Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). While a complaint "need not contain
10 detailed factual allegations" to survive a Rule 12(b)(6) motion, "it must plead enough facts to state
11 a claim to relief that is plausible on its face." *Cousins v. Lockyer*, 568 F.3d 1063, 1067-68 (9th
12 Cir. 2009) (internal quotation marks and citations omitted). A claim is facially plausible when it
13 "allows the court to draw the reasonable inference that the defendant is liable for the misconduct
14 alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

15  In considering whether a claim satisfies this standard, the court must "accept factual
16 allegations in the complaint as true and construe the pleadings in the light most favorable to the
17 nonmoving party." *Manzarek v. St. Paul Fire & Marines Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir.
18 2008). However, "conclusory allegations of law and unwarranted inferences are insufficient to
19 avoid a Rule 12(b)(6) dismissal." *Cousins*, 568 F.3d at 1067 (internal quotation marks omitted). A
20 court may "reject, as implausible, allegations that are too speculative to warrant further factual
21 development." *Dahlia v. Rodriguez*, 735 F.3d 1060, 1076 (9th Cir. 2013).

**DISCUSSION**

## I. PLM'S MOTION TO DISMISS

PLM moves to dismiss the Hundals' first, second, fourth, and fifth causes of action, for wrongful foreclosure, breach of fiduciary duty, breach of contract, and dual tracking. Mot. at 1

4

(Dkt. No. 6). It does not challenge the Hundals' claims under the FDCPA or Rosenthal Act.[3]

### A.     Wrongful Foreclosure

The Hundals' wrongful foreclosure cause of action is based on the theory that PLM was never appointed trustee under the Second DOT and thus lacked the authority to conduct the trustee's sale. *See* FAC ¶¶ 14-15. They note that according to paragraph 21 of the Second DOT, the only entity with the power to substitute the trustee is the "Lender," which Exhibit A of the Second DOT identifies as Bank of the West.[4] *Id.* The Hundals assert that Bank of the West never substituted PLM as trustee under the Second DOT, rendering the trustee's sale void. *Id.*

The problem with this theory is that the judicially noticeable documents in this case establish that Bank of the West *did* appoint PLM as trustee under the Second DOT. *See* PLM RJN Ex. 3 (Substitution of Trustee).[5] The Hundals have no response to this point, except to argue that the Substitution of Trustee is not judicially noticeable and thus cannot be considered in resolving PLM's motion to dismiss. *See* Oppo. at 8-10 (Dkt. No. 18); Oppo. to PLM RJN at 3-4 (Dkt. No. 18-1). I disagree. The Hundals cite to the California Supreme Court's recent decision in *Yvanova v. New Century Mortgage Corp.*, 62 Cal.4th 919 (2016), but they fail to explain how the decision supports their position that the Substitution of Trustee cannot be judicially noticed. If anything, the decision supports the opposite conclusion, because the California Supreme Court "t[ook] notice of a substitution of trustee" in considering the trial court's sustaining of a demurrer, and explicitly ruled that the trial court had "properly noticed . . . [t]he existence and facial contents" of "the recorded deed of trust, assignment of deed of trust, substitution of trustee, notices of default and of trustee's sale, and trustee's deed upon sale." *Id.* at 924 n.1, 925. Contrary to the Hundals'

---

[3] At the telephonic case management conference on May 4, 2016, I asked the parties to submit supplemental briefing on whether the Hundals' FDCPA claims against PLM and Glazer are adequately pleaded. Dkt. No. 32. Having reviewed the parties' supplemental briefs, I do not find it appropriate to sua sponte dismiss the FDCPA claims at this time.

[4] The Hundals also assert, without explanation, that Exhibit A also identifies Oak Financial Services as the lender in addition to Bank of the West. *See* FAC ¶ 15.

[5] Further, after Bank of the Trust assigned all beneficial interest in the Second DOT to Glazer on May 25, 2012, Glazer executed another Substitution of Trustee, again substituting PLM in place of AREA as the trustee under the Second DOT. FAC Ex. 1.

1  position, it is well established that "[p]ublicly-recorded real estate instruments, including deeds of
2  trust, assignments, and substitutions of trustee, as well as default and foreclosure notices, are the
3  proper subject of judicial notice, unless subject to reasonable dispute." *Amedee v. Citimortgage,*
4  *Inc.*, No. 15-cv-03356-HSG, 2016 WL 1070657, at *1 (N.D. Cal. Mar. 18, 2016); *see also*
5  *Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 866 n.1 (9th Cir. 2004)
6  ("a court may judicially notice matters of public record unless the matter is a fact subject to
7  reasonable dispute"); *Trinh v. Citibank, NA*, No. 12-cv-03902-EJD, 2012 WL 6574860, at *7
8  (N.D. Cal. Dec. 17, 2012) (dismissing wrongful foreclosure claim predicated on allegations that
9  were "directly contradicted" by judicially noticeable documents); *Gamboa v. Tr. Corps*, No. 09-
10 cv-00007-SC, 2009 WL 656285, at *3-4 (N.D. Cal. Mar. 12, 2009) (same).

11     The Hundals contend that the appointment of PLM as trustee is subject to reasonable
12 dispute, in that the Second DOT indicates that AREA, not Bank of the West, was the lender under
13 the Second DOT.  *See* Oppo. at 9; Oppo. to PLM RJN at 3-4.  But the Hundals specifically allege
14 that the Second DOT identifies "either Bank of the West [or] Oak Financial Services" as the
15 lender.  *See* FAC ¶ 15.  Moreover, their newfound explanation of why the Second DOT identifies
16 AREA as the lender is based on a blatant misrepresentation of the contents of the Second DOT.
17 They assert in their briefing that the SECOND DOT identifies AREA as,
18     ASSOCIATED REAL ESTATE ADMINISTRATORS, A PARTNERSHIP 1848 HAMILTON AVE, SAN JOSE
19     CALIFORNIA 95125, herein "Trustee and Beneficiary."
20 Oppo. to PLM RJN at 3 (purporting to quote Second DOT at p.1).  But the relevant portion of the
21 Second DOT actually states,
22     ASSOCIATED REAL ESTATE ADMINISTRATORS, A PARTNERSHIP 1848 HAMILTON AVE, SAN JOSE
       CALIFORNIA 95125 (herein "Trustee"), and the Beneficiary, SEE
23     ATTACHED EXHIBIT A . . . (herein "Lender").
24 Second DOT at p.1.  This language plainly indicates that Bank of the West, not AREA, was the
25 beneficiary and lender under the Second DOT.

26     The Hundals also contend that the Second DOT fails to identify Bank of the West as the
27 lender because the Second DOT refers to the "ATTACHED EXHIBIT A" for the identity of the
28 lender, and there are two documents attached to the Second DOT labeled "EXHIBIT A."  *See*

6

1   Oppo. to PLM RJN at 4; Second DOT at p.10-11.  But the other Exhibit A attached to the Second
2   DOT is titled "Legal Description" and consists of a legal description of the Property; it does not
3   provide a basis for a reasonable dispute over the identity of the lender under the Second DOT.  *See*
4   Second DOT. at p.10.

5   PLM's motion to dismiss the first cause of action for wrongful disclosure is GRANTED.

### B.     Breach of Fiduciary Duty

The Hundals' breach of fiduciary duty cause of action appears to be based on the theory that PLM had a fiduciary duty to interplead the entirety of the $640,100 it received pursuant to the trustee's sale.  *See* FAC ¶ 19.

Under California law, the trustee in a nonjudicial foreclosure "is not a true trustee with fiduciary duties, but rather a common agent for the trustor and beneficiary."  *Kachlon v. Markowitz*, 168 Cal. App. 4th 316, 335, 85 (2008).  The trustee does owe certain duties to the trustor, but these duties "are exclusively defined by the deed of trust and governing statutes."  *Id.*; *see also I. E. Associates v. Safeco Title Ins. Co.*, 39 Cal.3d 281, 287 (1985) ("The rights and powers of trustees in nonjudicial foreclosure proceedings have long been regarded as strictly limited and defined by the contract of the parties and the statutes.").  This is fatal to the Hundals' breach of fiduciary duty claim.  *See Giron v. Wells Fargo Bank, N.A.*, No. 14-cv-02437, 2014 WL 3434127, at *2 (C.D. Cal. July 11, 2014); *Garcia v. Am. Home Mortgage Servicing Inc.*, No. 11-cv-03678-LHK, 2011 WL 6141047, at *7 (N.D. Cal. Dec. 9, 2011); *Perez v. Wells Fargo Bank, N.A.*, No. 11-cv-02279-JCS, 2011 WL 3809808, at *16-17 (N.D. Cal. Aug. 29, 2011) (dismissing breach of fiduciary claim against trustee where "[p]laintiffs include no factual allegations that [the trustee] acted as anything other than a trustee under the deed of trust").

In any event, the Hundals have not identified anything in the Second DOT or governing statutes that required PLM to interplead the entirety of the $640,100.  They do not point to anything in the Second DOT that imposed such a requirement.  With respect to governing statutes, they contend that PLM was required to interplead the entirety of the $640,100 pursuant to subsections (c), (d), and (e) of California Civil Code section 2924j, but they cite no authority indicating that the procedures set out in those subsections apply in any context other than the

United States District Court
Northern District of California

distribution of "surplus funds," i.e., funds remaining after satisfaction of (1) "the trustee's costs and expenses in exercising the power of sale and conducting the sale;" and (2) "the debt [of] the beneficiary." *Banc of Am. Leasing & Capital, LLC v. 3 Arch Tr. Servs., Inc.*, 180 Cal. App. 4th 1090, 1102 (2009). The Hundals' breach of fiduciary cause of action, however, appears to be based on the theory that PLM was required to interplead the entirety of the $640,100, not just the surplus funds.[6]

PLM's motion to dismiss the second cause of action for breach of fiduciary duty is GRANTED.

### C. Breach of Contract

The elements of a claim for breach of contract under California law are: (1) existence of a contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach. *Abdelhamid v. Fire Ins. Exch.*, 182 Cal. App. 4th 990, 999 (2010); *CDF Firefighters v. Maldonado*, 158 Cal. App. 4th 1226, 1239 (2008).

In support of their breach of contract cause of action, the Hundals accuse PLM of (1) "wrongfully causing" the Notice of Default to be recorded and "the Property to be sold by an entity that was not lawfully appointed as trustee;" (2) failing to "promptly refund to [the Hundals] all funds it received in excess of the unpaid . . . balance of principal and interest," as required by "the last paragraph on page 2 of the [Second DOT];" (3) "denying [the Hundals] of their reinstatement rights summarized in paragraph 18 of the [Second DOT]" by improperly charging attorney's fees "related to securing relief from stay in the bankruptcy court," and by charging both attorney's fees and trustee's fees, "contrary to the nonjudicial foreclosure statutes that limit [PLM and Glazer] to . . . attorney's fees or trustee's fees." FAC ¶¶ 29-30.

---

[6] It is possible that the Hundals also mean to base their breach of fiduciary duty cause of action – or some other viable cause of action – on PLM's failure to either interplead or distribute to them the $198,610.59 in surplus funds from the trustee's sale. If that is the case, the Hundals should include clear allegations to that effect in their second amended complaint. In the parties' joint case management statement, PLM states that it has "repeatedly offered to [disburse] the surplus funds form the foreclosure sale to [the Hundals]," but that the Hundals "have thus far not returned the claim form PLM requested they execute to authorize release of those [funds]." Joint Case Management Statement at 6; *see also* Reply at 1 (Dkt. No. 24) ("PLM has made it painfully clear to plaintiffs and their counsel that upon plaintiffs completing a claim form, which they have . . . refused to do, PLM will distribute the surplus proceeds to them.").

These allegations do not support a claim for breach of contract against PLM. First, the Hundals fail to identify anything in the FAC or judicially noticeable documents plausibly establishing that PLM breached the Second DOT by wrongfully causing either the Notice of Default to be recorded or the Property to be "sold by an entity that was not lawfully appointed as trustee." *Id.* ¶ 29. As discussed above, the Hundals have not plausibly established that PLM was not the lawfully appointed trustee when it conducted the trustee's sale. With respect to the allegedly wrongful recording of the Notice of Default, the Hundals specifically allege that they had already defaulted on the loan secured by the Second DOT "when PLM agreed to become the trustee in place of [AREA]," *id.* ¶ 7, well before the recording of the Notice of Default. Elsewhere in the FAC, the Hundals appear to assert that the Notice of Default was wrongfully recorded because Glazer did not send the Hundals the balloon-payment notice required by California Civil Code section 2966. *See id.* ¶ 4; *see also* Cal. Civ. Code § 2966. But the Hundals do not explain how PLM's recording of the Notice of Default, even in the absence of a balloon-payment notice sent by Glazer, would amount to a breach of the Second DOT by PLM.

Second, the Hundals do not explain how the "the last paragraph of page 2 of the [Second DOT]" required PLM to "promptly refund to [the Hundals] all funds it received in excess of the unpaid . . . balance of principal and interest." *Id.* ¶ 29. That paragraph of the Second DOT does include a provision referring to the prompt refund of "Funds," but the term "Funds" is specifically defined as certain monthly payments for taxes and insurance. *See* Second DOT ¶ 2. It is not clear how this provision supports the Hundals' claim for breach of contract, and the Hundals do not address the issue in their opposition brief.

Finally, the Hundals' claim that PLM breached the Second DOT by improperly charging both attorney's fees and trustee's fees, and attorney's fees "related to securing relief from stay in the bankruptcy court," fails because the FAC and judicially noticed documents indicate that the challenged attorney's fees were charged by Glazer, not PLM. The Hundals do not explain how PLM breached the Second DOT as a result of attorney's fees charged by Glazer.

PLM's motion to dismiss the third cause of action for breach of contract is GRANTED.

9

### D. Dual Tracking

In support of their cause of action for dual tracking, the Hundals allege that

> In its capacity as trustee on the loan secured by the [First DOT], PLM knew or should have known that plaintiffs had approved a loan modification agreement and were seeking the approval of this agreement by the actual owners of the [Second DOT]. Plaintiffs loan modification packages were submitted and were complete. Thus, PLM knew or should have known that it lacked authority under the California Homeowner Bill of Rights . . . to proceed with a trustee's sale.

FAC ¶ 33. Although the Hundals do not cite the statute in their FAC or opposition brief, this cause of action appears to be based on California Civil Code section 2923.6(c), which provides that "[i]f a borrower submits a complete application for a first lien loan modification offered by, or through, the borrower's mortgage servicer, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale, or conduct a trustee's sale, while the complete first lien loan modification application is pending." Cal. Civ. Code § 2923.6(c).

The Hundals do not address the cause of action at all in their opposition brief. Given the general state of the Hundals' FAC and opposition brief, I read this is an implicit concession that the cause of action is defective as pleaded. PLM's motion to dismiss the fifth cause of action for dual tracking is GRANTED.

## II. EAGLE VISTA'S MOTION TO DISMISS

Eagle Vista moves to dismiss the cause of action for wrongful foreclosure, the one cause of action alleged against it. *See* Mot. at 1 (Dkt. No. 8). As discussed above, that cause of action fails because it is based on the theory that PLM was never appointed trustee under the Second DOT and thus lacked the authority to conduct the trustee's sale, a theory that is plainly contradicted by the judicially noticeable documents submitted by the parties. *See* FAC ¶¶ 14-15, Ex. 1; PLM RJN Exs. 3, 4. Accordingly, Eagle Vista's motion to dismiss is GRANTED.

## CONCLUSION

PLM and Eagle Vista's motions to dismiss are GRANTED. The Hundals shall file their second amended complaint, if any, within 20 days of the date of this Order. Absent agreement by

the parties, all defendants, including Glazer, shall respond to the second amended complaint within 14 days of being served with it.

**IT IS SO ORDERED**.

Dated: May 23, 2016



WILLIAM H. ORRICK
United States District Judge