UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PREETINDER K HUNDAL, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>PLM LOAN MANAGEMENT SERVICES, INC., et al.,<br><br>    Defendants. | Case No. 3:16-cv-01287-WHO<br><br>**ORDER ON PLM'S MOTION TO DISMISS THIRD AMENDED COMPLAINT**<br><br>Re: Dkt. No. 56 |

## INTRODUCTION

Plaintiffs Preetinder Hundal and Nishan Hundal ("the Hundals") brought this action for wrongful foreclosure and related claims against their lender, Alice Glazer as Trustee of the Glazer Living Trust dated 12/30/87 ("Glazer"), the trustee, PLM Loan Management Services, Inc. ("PLM"), and the purchaser in the foreclosure sale, Eagle Vista Equities, LLC ("Eagle Vista"). I previously dismissed Eagle Vista with prejudice and various claims against the other defendants without prejudice. Order on Defs.' Mots. to Dismiss Second Am. Compl. ("MTD SAC Order") (Dkt. No. 53). PLM now seeks to dismiss the Hundals' first cause of action for wrongful foreclosure and their second cause of action for breach of statutory duties.[1] Mot. to Dismiss Third Am. Compl. by Def. PLM Loan Management Services, Inc. ("Mot.") (Dkt. No. 56).

The acts about which the Hundals complain involve PLM's collection and distribution of the proceeds of the foreclosure sale, which the Hundals argue makes PLM liable under the Fair Debt Collection Practices Act ("FDCPA") as a debt collector and for tort damages in the wrongful

---

[1] As PLM noted in the motion, the newly alleged "breach of statutory duties" claim conflates the Hundals' FDCPA claims with their previously asserted "breach of state law duties" claim. This decision somewhat complicates the analysis, but, in an attempt to minimize confusion, I will differentiate between FDCPA and state law claims in the discussion of "statutory duties."

foreclosure claim. They either misunderstand or mischaracterize PLM's role. To be liable as a debt collector, PLM must (i) do something more than enforce security interests (the Hundals point to PLM's distribution of cash proceeds from the sale and PLM's decision to ignore the Hundals' request to interplead the proceeds), (ii) regularly engage in the business of debt collection, and (iii) violate a federal law. But all PLM is alleged to have done were acts consistent with being the foreclosure trustee (enforcing security interests), paying the lender (Glazer) the amount of its demand and, eventually, paying the Hundals the surplus. If PLM was guilty of malice or significant wrong-doing, a claim would lie. But no such claim is pleaded. At this stage, with this pleading (the fourth complaint filed by the Hundals), there is no plausible claim stated against PLM and no federal claim is left in this lawsuit. Accordingly, I GRANT PLM's motion and remand the matter to California Superior Court, County of Alameda.

## BACKGROUND

I reiterate only the background information relevant to this motion, and omit factual allegations pertaining to arguments that I previously rejected. On October 20, 2003, the Hundals borrowed $450,000 from Argent Mortgage Company, LLC and secured the transaction with a deed of trust ("First DOT") against their residence (the "Property"). Third Am. Compl. ("TAC") (Dkt. No. 54)[2], ¶ 2. On March 8, 2006, the Hundals borrowed an additional $165,000 and again secured the transaction with a deed of trust ("Second DOT") against the Property. *Id*. ¶ 3; PLM RJN Ex. 2 (Dkt. No. 56-1).[3] The Second DOT identifies "Associated Real Estate Advisors, a

---

[2] Page three, as well as the exhibits to the third amended complaint were inadvertently omitted from the electronic filing. Opp'n (Dkt. No. 61), 1. Plaintiffs corrected this error by filing a complete version of the TAC as an attachment to their Opposition. *See* Dkt. No. 61-1.

[3] PLM's request for judicial notice (Dkt. No. 56-1) is GRANTED IN PART AND DENIED IN PART. The Hundals object to the request on the basis that the court should not take notice of disputed facts, specifically, the amount of default documented in the Notice of Default. Dkt. No. 60 at 2-4. The Hundals misconstrue the purpose of noticing the Notice of Default. The court need not accept the amount as the *actual* amount due. The court notices only that the Notice of Default reflects a *certain* amount due. The Hundals' objections on this ground are OVERRULED. Next, the Hundals object to the court taking judicial notice of the findings of fact in the bankruptcy proceeding and PLM's Declaration of Non-Monetary Status filed in Superior Court prior to removal. For the former, the court takes notice only that the Relief from Stay was granted. Judicial notice of the latter is not necessary, and so the Hundals objection is SUSTAINED as to it.

Partnership" ("AREA") as the trustee in the Second DOT. *See* Second DOT. at p.1. The beneficiary and lender was Bank of the West as Trustee for the Donald A. Glazer IRA ("Bank of the West"). *See id.* at p.1, Ex. A.

On January 24, 2008, Bank of the West executed a Substitution of Trustee substituting PLM in place of AREA as the trustee under the Second DOT. *Id*. ¶ 7; PLM RJN Ex. 3. The Substitution of Trustee was recorded on February 4, 2008. *Id.*

On May 12, 2012, Bank of the West executed an Assignment of Deed of Trust transferring all beneficial interest in the Second DOT from Bank of the West to Glazer. TAC ¶ 5; PLM RJN Ex. 4. The Assignment of Deed of Trust was recorded on June 4, 2012. *Id.*

The Hundals defaulted on their obligations under the Second DOT, *see, e.g*., TAC ¶ 10,[4] and on January 21, 2015, PLM caused to be recorded a Notice of Default and Election to Sell Under Deed of Trust. PLM RJN Ex. 5. The Notice of Default identified a default amount of $365,124.08 as of January 15, 2015. *Id*. Then, on April 24, 2015, PLM caused to be recorded a Notice of Trustee's Sale identifying the "[a]mount of unpaid balance and other charges" as $373,147.98 and setting the trustee's sale for May 20, 2015. PLM RJN Ex. 6.

The Hundals then filed for bankruptcy under Chapter 13 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Northern District of California. TAC ¶ 12. On July 31, 2015, the Bankruptcy Court granted Glazer's Motion for Relief From the Automatic Stay, finding that the Hundals' bankruptcy petition was part of a scheme to hinder, delay, or defraud creditors and permitting Glazer "to exercise her lawful remedies and lien rights under

---

[4] The Hundals plead this inconsistently. They say that they made their payments under the Second DOT to Oak Financial Services, and "that these payments to Oak Financial Services were not properly credited towards repayment of this loan." TAC ¶ 4. They claim that they "had received assurances from Ocwen that this second lien would be paid by Ocwen's principal," but they were prevented from pursuing this course of action since PLM failed to provide the Hundals with an accounting of the default. *Id*. They allege that the "loan principal was not due or could have been repaid upon receipt of a proper accounting." *Id*. at ¶ 8. And further, they add that "[t]he default which existed was with respect to the payments on the senior loan in which Ocwen was the servicer … [and] plaintiffs had secured a loan modification from Ocwen that would have removed the default." *Id*. And they conclude this paragraph by stating the "trustee sale was void since it was held despite the absence of a default… ." *Id*. I take from the pleading that the Hundals admit that they were in default but that they dispute the exact amount. At the most recent hearing, the Hundals' counsel admitted that the Hundals owed Glazer around $200,000 at the time of the sale but disputed the amount of the attorneys' fees demanded.

applicable non-bankruptcy law as to [the Property]." PLM RJN Ex. 7.

Eagle Vista subsequently purchased the Property at the trustee's sale for $640,100. PLM RJN Ex. 8. After receiving Glazer's demand, PLM remitted $440,784.86 to Glazer and allotted $704.55 to the documentary transfer tax, leaving a surplus of $198,610.59. TAC ¶ 18. PLM paid the Hundals this surplus amount only after the Joint Case Management Statement was filed in this case. *Id*. ¶ 17.

The Hundals filed this action—their third lawsuit—on December 8, 2015 in the Superior Court of California for the County of Alameda. Dkt. No. 1. They filed their first amended complaint ("FAC") on February 19, 2016, preceding removal to this court. *Id.* The FAC brought six causes of action: (1) wrongful foreclosure against all defendants, FAC ¶¶ 13-17; (2) breach of fiduciary duty against PLM and Glazer, *id.* ¶¶ 18-20; (3) violation of the federal Fair Debt Collection Practices Act ("FDCPA") against PLM and Glazer, *id.* ¶¶ 21-27; (4) breach of contract against PLM and Glazer; (5) dual tracking against PLM and Glazer, *id.* ¶¶ 32-35; and (6) violations of California's Rosenthal Act against PLM and Glazer, *id.* ¶¶ 36-37.

On March 16, 2016, PLM removed the case to federal court, asserting federal question jurisdiction on the basis of the FDCPA claim for relief. Notice of Removal ¶ 2 (Dkt. No. 1). On March 23, 2016, PLM and Eagle Vista moved to dismiss. Dkt. Nos. 6, 8. On May 20, 2016, I issued the Prior Order granting PLM's and Eagle Vista's motions to dismiss, and on June 3, 2016, the Hundals filed the SAC. Dkt. Nos. 36, 37. Defendants filed their motions to dismiss shortly thereafter. Dkt. Nos. 38, 39, 41. I heard arguments on August 31, 2016, and on September 2, 2016, I dismissed Eagle Vista from the action with prejudice and granted PLM's motion to dismiss claims for wrongful foreclosure, breach of state law duties, and dual tracking. Dkt. No. 53. I also granted Glazer's motion to dismiss claims for wrongful foreclosure, FDCPA violations, dual tracking, and Rosenthal Act violations, but denied her motion to dismiss the breach of contract claim. *Id*.

The Hundals filed the TAC on September 14, 2016 (Dkt. No. 54), alleging three causes of actions: (1) wrongful foreclosure against all defendants, TAC ¶¶ 19-23; (2) "breach of statutory duties" against PLM, *id*. ¶¶ 24-34; and (3) breach of contract against Glazer, TAC ¶¶ 35-38. PLM

4

now moves to dismiss the remaining claims against it.

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to "give the defendant fair notice of what the claim is and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and alterations omitted).

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). While a complaint "need not contain detailed factual allegations" to survive a Rule 12(b)(6) motion, "it must plead enough facts to state a claim to relief that is plausible on its face." *Cousins v. Lockyer*, 568 F.3d 1063, 1067-68 (9th Cir. 2009) (internal quotation marks and citations omitted). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

In considering whether a claim satisfies this standard, the court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marines Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). However, "conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal." *Cousins*, 568 F.3d at 1067 (internal quotation marks omitted). A court may "reject, as implausible, allegations that are too speculative to warrant further factual development." *Dahlia v. Rodriguez*, 735 F.3d 1060, 1076 (9th Cir. 2013).

## DISCUSSION

### I. WRONGFUL FORECLOSURE

Since I previously found Eagle Vista to be a bona fide purchaser, MTD SAC Order at 8, the Hundals base their wrongful foreclosure claim on a tort-based, rather than equitable, theory.

Such a claim requires that: "(1) the trustee or mortgagee caused an illegal, fraudulent, or willfully oppressive sale of real property pursuant to a power of sale in a mortgage or deed of trust; (2) the party attacking the sale … was prejudiced or harmed; and (3) in cases where the trustor or mortgagor challenges the sale, the trustor or mortgagor tendered the amount of the secured indebtedness or was excused from tendering." *Miles v. Deutsche Bank Nat'l Trust Co.*, 236 Cal. App. 4th 394, 408 (2015) (internal quotation marks and citation omitted).

Given my prior rulings, the Hundals focus on the contention that PLM was a debt collector under the FDCPA.[5] They claim that PLM's failure to comply with the FDCPA provisions deprived them of their opportunity to repay the Glazer loan, and resulted in the wrongful foreclosure of their property. TAC ¶ 24-34. PLM responds that the Hundals' wrongful foreclosure cause of action must fail because of the immunity granted to trustees in pursuit of non-judicial foreclosure under California Civil Code section 2924 et seq. and the Hundals' failure to adequately allege that tender was made or excused. Mot. 10-15; Reply 11-14. Given that the theory underlying the cause of action depends on the FDCPA, I will address PLM's arguments after discussing the FDCPA.

**A. The Fair Debt Collection Practices Act**

In prior motions to dismiss, PLM did not argue that it was not liable under the FDCPA. MTD SAC Order at 7:12-13. Now it does. *See* Mot. 18

For the Hundals to plausibly allege a wrongful foreclosure cause of action against PLM based on the FDCPA, the underlying violations must render the foreclosure "illegal, fraudulent, or willfully oppressive." *See Miles*, 236 Cal. App. 4th at 408 (reciting the elements for a tortious wrongful foreclosure). It is not enough that failure to comply with the FDCPA "effectively deprived plaintiffs of the opportunity to recover their property and to secure reinstatement of the debt." TAC ¶ 33.

---

[5] I previously rejected their claims that: (1) PLM was never lawfully appointed trustee under the SDOT and therefore lacked the authority to conduct the trustee's sale; and (2) Glazer never had the lawful authority to appoint PLM as trustee on the SDOT. *See* Prior Order (Dkt. No. 36) at 5-6; MTD SAC Order (Dkt. No. 53) at 7:5-7.

6

The Ninth Circuit recently addressed whether the trustee of a California deed of trust is a 'debt collector' under the FDCPA in *Vien-Phuong Thi Ho v. Recontrust Co., NA*, No. 10-56884, 2016 U.S. App. LEXIS 18836, at *5 (9th Cir. Oct. 19, 2016). Ho does not support the Hundals' FDCPA theories.

To start, the *Ho* majority noted that the FDCPA includes a "general definition of 'debt collector,' contained at section 1692a(6)," as well as a "narrower definition of the term [that] 'also includes' entities whose principal business purpose is 'the enforcement of security interests.'" *Id*. at *11 (quoting 15 U.S.C. § 1692a). It reasoned that the narrower definition "would be superfluous if all entities that enforce security interests were already included in the definition of debt collector for purposes of the entire FDCPA." *Id*. Trustees falling under the narrow definition are not liable under the FDCPA. *Id*. at *9-10. Because the mere acts of sending a notice of default and a notice of sale are not attempts to collect "debts," trustees must do something more, such as "engag[ing] in activities that constitute debt collection," to fall within the FDCPA's ambit. *Id*. at *12. Further, a trustee's decision to include a disclaimer on a notice stating that a trustee "is a debt collector attempting to collect a debt" is insufficient to label the trustee a debt collector under the FDCPA. *Id*. at *16 n.7.

The narrower definition would include PLM as a debt collector because it "includes entities whose principal business purpose is the enforcement of security interests." *See id*. at *11; *see also id.* ("All parties agree that [the trustee] is a debt collector under the narrow definition.").[6] But PLM is not a debt collector under the general definition of the FDCPA. The court in *Ho* "affirmed the leading case of *Hulse v. Ocwen Federal Bank*, 195 F. Supp. 2d 1188, 1204 (D. Or. 2002), which held that 'foreclosing on a trust deed is an entirely different path' than 'collecting funds from a debtor.'" 2016 U.S. App. LEXIS 18836, at *9.

*Ho* does not elaborate on what kinds of additional activities would be sufficient to

---

[6] *But see Hulse v. Ocwen Fed. Bank, FSB*, 195 F. Supp. 2d 1188, 1204 (D. Or. 2002) ("Foreclosure by the trustee is not the enforcement of the obligation because it is not an attempt to collect funds from the debtor. … [T]he activity of foreclosing on the property pursuant to a deed of trust is not the collection of a debt within the meaning of the FDCPA.")

constitute "debt collection,"[7] but the dissent points out that the majority "could not mean additional egregious actions in which some debt collectors engage, such as banging on the debtor's door or calling her incessantly." *Id*. at *47. Indeed, the plaintiff in Ho alleged that the defendants engaged in just those activities (e.g., banging on the door, trespassing, and posting false notices), and it wasn't enough for the majority to conclude they were engaged in debt collecting because the trustee still would not be attempting to collect a "debt." Notably, the *Hulse* court held that "*any* actions taken by [the defendant] in pursuit of the actual foreclosure may not be challenged as FDCPA violations."[8] *Hulse*, 195 F. Supp. 2d at 1204 (emphasis added). Presumably, activities constituting debt collection would have to involve an attempt to collect actual *money*, since "[f]or the purposes of the FDCPA, the word 'debt' is synonymous with 'money.'" *Ho*, 2016 U.S. App. LEXIS 18836 at *8.

The Hundals allege that PLM's final act of distributing the funds exceeds the scope of the limited definition of a debt-collector under § 1692f(6), and brings PLM within the scope of the general definition of a debt collector. TAC ¶¶ 32-33. They contend that PLM ignored their claims that Glazer's demand for $440,000 was unfounded and their requests for PLM to interplead the funds. TAC ¶¶ 17-18. They assert that the distribution of surplus funds is a discretionary act under § 1692f(6) that transforms PLM into a debt collector covered by the FDCPA and they specifically identify PLM's "[t]aking and retaining $640,100 and insisting on a release of liability before releasing any money" as an abusive debt collection practice. Opp'n 14.

Under *Hulse*, none of these actions could be challenged as FDCPA violations because they were all taken "in pursuit of the actual foreclosure." *Hulse*, 195 F. Supp. 2d at 1204. Holding

---

[7] But *Ho* does point to *Derisme v. Hunt Leibert Jacobson P.C.*, 880 F. Supp. 2d 311, 326 (D. Conn. 2012), which lists cases drawing "a distinction between non-judicial foreclosures which are intended to only enforce the mortgagee's security interest and judicial foreclosure which also seeks a personal judgment against the debtor for a deficiency which would amount to a debt collection."

[8] *See supra* note 9. The *Natividad* court, however, listed some actions related to nonjudicial foreclosure that might be considered debt collection under the FDCPA. *See Natividad v. Wells Fargo Bank, N.A.*, No. 3:12-cv-03646 JSC, 2013 U.S. Dist. LEXIS 74067, at *28 (N.D. Cal. May 24, 2013) ("For instance, persons who regularly or principally engage in communications with debtors concerning their default that go beyond the statutorily mandated communications required for foreclosure may be considered debt collectors.").

*money* that was indisputably due to the Hundals may be an act arguably outside of the scope of the actual foreclosure. But it is hardly "an attempt to collect a debt" under the FDCPA. Moreover, PLM would have to *regularly* engage in such activities to be a debt collector under the general definition. *See* 15 U.S.C. § 1692a(6) ("The term 'debt collector' means any person … who regularly collects or attempts to collect… ."). The TAC is devoid of any such allegations.

To state a claim under the FDCPA, the Hundals also have to allege that PLM's debt collection activities violated a federal statute. *Natividad*, 2013 U.S. Dist. LEXIS 74067, at *11. The Hundals allege that PLM violated Section 1692f(6)(A) because it had no present right to possess the property in the foreclosure, TAC ¶ 30, and that PLM "received information from plaintiffs that they were actively securing a loan modification and were ready willing and able to cure any default on this second lien." TAC ¶ 14. But the allegation that the Hundals were "actively securing" a loan modification does not mean PLM had no present right to possess the property. That the Hundals were seeking a loan modification does not automatically cure any default. Indeed, by alleging their *willingness to cure* any default, they effectively concede that the second lien was in default.

They also assert that the full amount of the loan could not have been due because Glazer did not provide notice that the loan would not renew automatically. TAC ¶ 23. This goes to the breach of contract claim against Glazer. The trustee was entitled to rely on the representations of the beneficiary. Given the amount reflected in the notice of default and PLM's right as trustee to rely on information from the beneficiary, the Hundals' allegations are insufficient to support their claim that PLM had no present right to possess the property at the time of the sale.

**B. Non-FDCPA Based Wrongful Foreclosure Allegations and Statutory Immunity**

Turning to the Hundals non-FDCPA dependent allegations for this cause of action, they contend that "PLM breached its obligation to investigate" and "breached its obligation to provide an accounting or itemization of the basis for the alleged default described in its Notice of Default." TAC ¶ 21. They do not cite authority for these obligations.[9] The statutory framework provides

---

[9] Later in the TAC, however, plaintiffs cite to 15 U.S.C. § 1692g in connection with their failure to investigate claim. TAC ¶ 28. This citation turns us back to the FDCPA provisions targeted

9

immunity for "any good faith error resulting from reliance on information provided in good faith by the beneficiary regarding the nature and the amount of the default under the secured obligation, deed of trust, or mortgage." Cal. Civil Code § 2924(b); *see also Flores v. EMC Mortg. Co.*, 997 F. Supp. 2d 1088, 1127 (E.D. Cal. 2014) ("In the absence of allegations of [trustee's] malice or other significant wrongdoing, section immunity 2924(d) bars purported claims against [the trustee].")

PLM contends that its conduct in pursuit of non-judicial foreclosure is privileged pursuant to Civil Code sections 47 and 2924(d). Mot. 10-12; Reply 11-13. The Hundals urge the court not to apply the state statutory privilege since "[t]his case is in Federal Court on the basis of Federal Question jurisdiction." Opp'n 21. They then argue, "even under § 47b, PLM must establish it had a 'reasonable' belief that the Hundals owed $365, 124.08 as of 1-18-2015." *Id*. The Hundals are mistaken. PLM, as trustee, is entitled to immunity for state law causes of action, even though this case is in federal court on the basis of federal question jurisdiction. California Civil Code section 2924(d) extends the general litigation privilege under Civil Code section 47 to the "mailing, publication, and delivery of notices [and p]erformance of [non-judicial foreclosure] procedures." Cal. Civ. Code 2924(d).

The Hundals rattle off a list of reasons why PLM should not be entitled to statutory immunity. Opp'n 22. Two attack PLM's purported good faith: PLM insisted on a waiver of all claims as a condition precedent to giving the Hundals the "surplus" money owed to them; and, PLM made no effort to exercise due diligence as required by Civil Code section 2924j and still has not provided the Hundals with an accounting of the basis for the payments to Glazer.[10] The statutory provision requiring the exercise of due diligence arises only if the trustee receives written claims to the surplus. Cal. Civ. Code § 2924j ("The trustee shall exercise due diligence to determine the priority of the written claims received by the trustee to the trustee's sale surplus proceeds from those persons to whom notice was sent… .") Here, PLM received no conflicting claims to the *surplus*. It eventually distributed the full amount of the surplus to the Hundals, so no

---

towards the general definition of a "debt collector."

[10] At the hearing the Hundals reported that Glazer has now provided them with an accounting.

due diligence requirement attached.

The Hundals' true issue does not concern distribution of the surplus, but rather distribution of the *entire* proceeds from the sale, because they dispute the amount in default. TAC ¶¶ 25, 26, 29, 32. The Hundals have alleged that PLM should have known that the amount due was significantly less than the $440,000 paid to Glazer. TAC ¶ 14 ("PLM knew, or should have known, that the deed of trust called for payment of principal of $165,000. … PLM knew that roughly two years of payments, totaling about $30,000 may also have been delinquent."); *see also* Opp'n 21 ("[PLM's] own evidence shows it knew the claim of $365,124.08 was false.").[11] The $165,000 and $30,000 figures account for the amount of the actual default, totaling around $200,000. But that figure does not include "interest, late charges, legal fees and foreclosure fees" to which Glazer may have been entitled from the proceeds of the foreclosure sale. *See* Notice of Default and Election to Sell, PLM RJN Ex. 5 (Dkt. No. 56). PLM, as trustee, was entitled to rely on the representations of the foreclosing beneficiary. Cal. Civ. Code § 2924(b). Although the $440,000 was more than twice the principal amount under the Second DOT, that fact alone is insufficient to assert PLM's bad faith in paying Glazer that amount.

The Hundals allege that PLM's conditional payment of the surplus and its failure to provide an accounting amount to malice. But they have received the full amount of the surplus from PLM and an accounting from Glazer that will allow them to litigate their breach of contract claim. Glazer, not PLM, had the records to provide for the accounting. PLM's alleged attempt to extract a release before distributing the surplus indisputably belonging to the Hundals is a sharp practice, but it does not by itself constitute malice. In the absence of additional allegations regarding malice or bad faith, PLM is entitled to statutory immunity, and the Hundals' cause of action for wrongful foreclosure is DISMISSED.

### C. Tender Requirement

If the privilege did not apply, the Hundals' cause of action would still fail because they

---

[11] Hundal notes that two years before the instant NOD, PLM recorded an NOD claiming around $11,000 due and payments of $2,200 per month. Opp. 21-22. PLM does not explain how this amount due grew to over $440,000. *Id*.

11

have once again failed to adequately allege tender. The Hundals simultaneously assert that they made a tender offer and that they are excused from tender. During the hearing, the Hundals attempted to clarify that what they called tender was actually participation in the loan modification procedure. But "tender must be one of full performance ... and must be unconditional to be valid." *Arnolds Mgmt. Corp. v. Eischen*, 158 Cal. App. 3d 575, 580 (Cal. Ct. App. 1984). "Nothing short of the full amount due the creditor is sufficient to constitute a valid tender, and the debtor must at his peril offer the full amount." *Rauer's Law etc. Co. v. S. Proctor Co.,* 40 Cal. App. 524, 525 (Cal. Ct. App. 1919). Although a loan modification may have enabled the Hundals to *eventually* cure any default on the Second DOT, this alone does not amount to tender of "the full amount due." *See id*. Since the Hundals have not alleged that they offered Glazer the full amount of the default, their allegations of tender fail.

      The Hundals also argue that they do not "have a duty to make tender as a condition precedent to their wrongful foreclosure claims," (Opp'n 23), but the basis of their argument is not at all clear. They cite *Yvanova v. New Century Mortgage Corporation* for the proposition that "[t]ender has been excused when, among other circumstances, the plaintiff alleges the foreclosure deed is facially void." 62 Cal. 4th 919, 929 (2016). But they fail to include plausible allegations that the foreclosure deed is facially void. I previously rejected arguments concerning unlawful substitution and assignment. *See* MTD SAC Order at 6:18-7:10. If the Hundals are relying on their allegations that the Second DOT was not in default, containing conflicting facts on this issue as they do (*see supra* note 4) or that they were undergoing a loan modification that would have cured any default, TAC ¶ 10, *see id*. at 3 n.4, neither renders the foreclosure deed facially void.

      The Hundals rely on *Pfeifer v. Countrywide Home Loans, Inc.*, 211 Cal. App. 4th 1250 (Cal. Ct. App. 2012), and *Fonteno v. Wells Fargo Bank, N.A.*, 228 Cal. App. 4th 1358 (Cal. Ct. App. 2014) in support of their tender arguments. Both cases are distinguishable. The plaintiffs in both alleged that the foreclosure was void based on the lenders' failure to comply with HUD regulations where the FHA DOT explicitly required compliance with the HUD regulations. *Pfeifer*, 211 Cal. App. 4th at 1280; *Fonteno*, 228 Cal. App. 4th at 1368. Nothing here explicitly requires PLM to comply with the FDCPA regulations prior to conducting the trustee's sale, so the

1  same reasoning does not apply.

2  Additionally, in *Pfeifer*, no foreclosure sale had occurred. *Pfeifer*, 211 Cal. App. 4th at 1280. The court noted, "[a] number of courts have explicitly held that the tender rule applies only in cases seeking to set aside a completed sale, rather than an action seeking to prevent a sale in the first place." *Id*. Here, of course, the sale has occurred. And in *Fonteno*, plaintiffs challenged the authority of the trustee to conduct the sale (without complying with the HUD regulations), and therefore alleged that the sale was void or voidable. But there is no question here that PLM had the authority to conduct the sale. Neither *Pfeifer* nor *Fonteno* help the Hundals.

The Hundals also confusingly point to FDCPA provisions to support their claim that no tender is required. Reply 23-24. They focus on PLM's disclaimer in its notice that it was a debt collector to justify application of the FDCPA provisions. Reply 24. But the *Ho* court conclusively stated, "this disclaimer isn't sufficient to show that [trustee] is a debt collector." *Ho*, 2016 U.S. App. LEXIS 18836 at *16 n.7. As I have discussed at some length, PLM is not subject to the FDCPA. There is no plausible theory that would allow the Hundals not to plead tender to support their cause of action for wrongful foreclosure. This cause of action is meritless.

## II. STATUTORY VIOLATIONS

The task of sorting through the various allegations involving statutory violations is complicated by the Hundals' choice to combine their previously alleged federal and state causes of action in the TAC. I will attempt to sort through the allegations and address each statutory violation separately.

### A. Failure to Interplead the "Disputed Funds" – Cal. Civ. Code § 2924j

The Hundals claim that within 15 days of the trustee sale, they demanded that all funds be distributed through the Court in an interpleader action in accordance with California Civil Code 2924j(e). TAC ¶ 15. Instead, PLM distributed the funds in accordance with California Civil Code § 2924k. As discussed above, PLM justifiably relied on the good faith claim of the beneficiary in determining how to distribute the proceeds from the sale. Mot. 10-12. If the Hundals disputed the proposed distribution, they could have brought an action for declaratory relief. *See, e.g.*, *Smith v. James A. Merrill, Inc.*, 64 Cal. App. 4th 94, 97 (1998).

13

The Hundals allege, "PLM is liable for damages for failing to properly allocate the money it received." Opp'n 17. But they offer no coherent theory or plausible basis for this contention. They state that "[t]he TAC alleges a dispute over $165,000 because of failure to demand payment." Opp'n 18 (citing TAC ¶ 8). It seems the Hundals are claiming that, prior to distribution, they disputed the amount allocated for payment to the beneficiary because the principal loan amount was not due, and given this dispute, PLM should not have distributed the sale proceeds according to the information provided by the beneficiary. But elsewhere, they admit the amount due was $165,000, plus $30,000. TAC ¶ 14. They fail to cite any non-FDCPA provisions that place an obligation to investigate conflicting claims to the sale proceeds. Accordingly, PLM's motion to dismiss a cause of action for failure to interplead the funds is GRANTED.

### B. Other State Statutory Violations

The Hundals include various other allegations throughout their complaint, some of which fail to reference specific code sections. *See, e.g.*, TAC ¶ 30 ("The California Civil Code requires the lender or its agent to provide the payoff demand before commencing a non-judicial foreclosure case.") They do not cite a specific statutory section requiring the trustee to provide a payoff demand before commencing a non-judicial foreclosure. The litigation privilege protects PLM as trustee, so the other state statutory violations must be dismissed.

### C. FDCPA Violations

As discussed above, I find that PLM is a debt collector only under the limited definition of Section 1692a(6). But the Hundals' claim for relief under Section 1692f(6) fails because they do not plausibly allege that PLM had no right to possess the property. All other claims for statutory violations alleged under the FDCPA's general definition of debt collector, including Sections1692g, 1692f(1), 1692e(2), 1692e(5) and 1692n, are DISMISSED.

## CONCLUSION

For the reasons stated above, the claims the Hundals seek to bring against PLM under the FDCPA are meritless and they have failed for the fourth time to plausibly plead a cause of action against PLM. Accordingly, I GRANT PLM's motion to dismiss without leave to amend.

Further, because there is no basis for federal jurisdiction in the remaining claims the Hundals have against Glazer, this case is REMANDED to the California Superior Court, County of Alameda.

The Clerk shall close the file.

**IT IS SO ORDERED**.

Dated: December 8, 2016

_____
WILLIAM H. ORRICK
United States District Judge